UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARC D'HOLLANDER,

    Petitioner,

    v.

SAN FRANCISCO COUNTY SUPERIOR COURT,

    Respondent.
                                            /

No. C 09-519 SI (pr)

**ORDER DENYING PETITION FOR REMOVAL AND REMANDING TO STATE COURT**

A.     <u>Removal Petition</u>

    Marc D'Hollander, in custody at Napa State Hospital ("NSH"), has filed a petition for removal of a criminal case pending against him in San Francisco County Superior Court. For the reasons discussed below, the court denies the petition for removal and remands the case back to state court.

    D'Hollander's petition and attached affidavit provide the following information: In 2002, D'Hollander was charged in the San Francisco County Superior Court with murder. At some point thereafter, the court determined that he was incompetent and ordered him transferred to Atascadero State Hospital under California Penal Code § 1370. While at Atascadero, D'Hollander decided to pretend to be incompetent because he believed that if he was deemed to be incompetent, he would avoid the murder charge and be sent back to France, where he lived. After about three years at Atascadero, he was returned to the county jail and then to San Francisco County Superior Court, where a judge ordered another mental examination. D'Hollander states that he pretended to be mentally ill and incompetent for the examiner. He

then was found to be incompetent to stand trial and a San Francisco County Superior Court judge then ordered him sent to NSH. When his plan (to be deemed incompetent and returned to France) did not work out as intended, he decided to demand a trial. He made requests for a trial in 2007. When those requests were not granted, he escaped from NSH and hitchhiked to San Francisco, where he visited the San Francisco Chronicle offices and the public defender's office before he was taken first to the psychiatric ward at San Francisco General Hospital and then back to NSH a few days later. In May 2008, he was taken to the San Francisco County Superior Court's mental health division for some unidentified proceedings, and then was returned immediately after the proceedings to NSH. He apparently had another court proceeding scheduled in the first quarter of 2009.

A criminal defendant may remove a pending state court prosecution to federal court if he can demonstrate that he will be unable to enforce in state court "a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1). To remove a case under § 1443(1), a defendant must meet a two-pronged test. First, "it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" Johnson v. Mississippi, 421 U.S. 213, 220 (1975) (quoting Georgia v. Rachel, 384 U.S. 780, 792 (1966)); see also Davis v. Superior Court of California, 464 F.2d 1272 (9th Cir. 1972) (removal of state prosecution to federal court under § 1443(1) is specific and extremely narrow; claims must relate to statutes explicitly protecting equal racial civil rights). Second, it must appear "that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of the State.'" Johnson, 421 U.S. at 220 (citation omitted). This generally requires a state law or constitutional provision that denies the defendant an opportunity to raise a federal right. Id. Even if the state law on its face does not explicitly deny the criminal defendant the opportunity to enforce the specific federal right, removal may be appropriate if an "equally firm prediction" can be made that the defendant will be unable to enforce the federal right in state court. Id. at 219-20.

D'Hollander's petition does not allege any ground to support a jurisdictional basis for removal of his state criminal action. He has not identified a state law or constitutional provision that denies him the opportunity to raise a federal right to racial equality, nor has he alleged facts which would lead this court to predict that he will be unable to enforce such a federal right in state court. See Johnson, 421 U.S. at 219-20. He appears to contend that removal is proper because he is being denied a trial by the San Francisco County Superior Court and the appointed attorneys at that court "to conceal the illegal, although frequent, procedure of summarily deporting foreigners charged with crimes for judicial convenience, judicial economy, and to save State Department of Corrections and other resources." Affidavit, p. 4. The allegation does not warrant the removal of his criminal case to federal court. The removal statute has no role in accommodating generalized fears of unfairness in the criminal justice system. See City of Greenwood v. Peacock, 384 U.S. 808, 827-28 and 832-34 (1966) (discussing the disruptive effect on the administration of criminal justice in America if merely alleging racist and/or unfair prosecution justified removal to federal court). The petition does not meet the substantive requirements for removal jurisdiction.

The petition also must be denied because it is procedurally defective and apparently untimely. He failed to comply with the requirement that he attach copies of all pleadings from the state court case to his petition for removal. See U.S.C. § 1446(a). Further, absent good cause, a removal petitioner must file the petition within thirty days after his arraignment or at any time before trial, whichever is earlier. See id. at § 1446(c)(1). D'Hollander indicates that he was arrested in 2002, so it is almost certain that his arraignment took place more than 30 days ago.

For the foregoing reasons, the petition for removal is DENIED and the state criminal action is hereby REMANDED to state court. The clerk shall mail a certified copy of this order to the clerk of the Superior Court of San Francisco County.

B.   Challenging The Commitment To A Mental Hospital

Although this court has rejected D'Hollander's efforts to remove his criminal case to

3

1 federal court, it may be possible for him to file another action to challenge the commitment order
2 that causes him to be in custody at NSH. A person "in custody in violation of the Constitution
3 or laws or treaties of the United States" may file a petition for writ of habeas corpus to challenge
4 that custody. See 28 U.S.C. § 2241(c)(3). Before D'Hollander may file such a habeas petition,
5 however, it is necessary that he figure out what federal claims he wants to assert and exhaust
6 state court remedies for each of those claims.

7 Principles of comity and federalism require that this court abstain and not entertain a pre-
8 sentence habeas challenge unless the petitioner shows that: (1) he has exhausted available state
9 judicial remedies, and (2) "special circumstances" warrant federal intervention. Carden v.
10 Montana, 626 F.2d 82, 83-84 (9th Cir. 1980); see Hartley v. Neely, 701 F.2d 780, 781 (9th Cir.
11 1983) (pretrial petition raising colorable claim of double jeopardy could be considered after
12 petitioner exhausted state court remedies); Finetti v. Harris, 609 F.2d 594, 597-98 (2d Cir. 1979)
13 (state prisoner seeking to challenge in federal court the constitutionality of the denial of state bail
14 must do so by way of a petition for writ of habeas corpus and must first exhaust state remedies
15 by presenting his claims to the highest state court available for review); see generally Younger
16 v. Harris, 401 U.S. 37, 43-54 (1971) (under principles of comity and federalism, a federal court
17 should not interfere with ongoing state criminal proceedings by granting injunctive or
18 declaratory relief absent extraordinary circumstances).

19 A special circumstance that might warrant habeas consideration before the criminal trial
20 and appeal concludes might be the commitment of a petitioner to a state mental hospital.
21 Waiting for the conclusion of all state criminal proceedings and appeals therefrom might deprive
22 D'Hollander of a meaningful opportunity to have federal habeas review of the commitment
23 order. Being involuntarily placed in a mental hospital if one does not belong there might be a
24 case of an irreparable injury that would make federal habeas relief possible notwithstanding that
25 the order has been issued in connection with ongoing state criminal proceedings.

26 Any claim about the commitment order is premature at this time, however, because
27 D'Hollander has not exhausted his state court remedies yet. He must exhaust state court
28 remedies before this court may entertain a petition challenging the order committing him to the

4

mental hospital. He may exhaust state court remedies by presenting his claims to the California Supreme Court and giving that court a fair opportunity to rule on the merits of his federal claims. Further, it is not enough for him to say he thinks the commitment order is wrong; he must identify every federal right that has been violated by the issuance of the commitment order and must provide a sufficient description of the facts in support of his claims so that this court and respondent will be able to understand them.

D'Hollander's complaints about the conditions of confinement at NSH are dismissed without prejudice to him asserting those claims in a civil rights action. Neither a federal habeas action nor a removed criminal case is the correct vehicle to assert claims about the conditions of one's confinement.

After mailing a certified copy of this order to the clerk of the Superior Court of San Francisco County, the clerk shall close the file.

IT IS SO ORDERED.

DATED: April 9, 2009

SUSAN ILLSTON
United States District Judge

5